IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSHUA SPEARS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 12-CV-17-JED-TLW |
| v. | ) |
| | ) |
| E-Z MART STORES, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Court has for its consideration the Motion for Summary Judgment (Doc. 26) filed by defendant, E-Z Mart Stores, Inc. ("E-Z Mart"). Plaintiff, Joshua Spears ("Spears"), filed a response (Doc. 37), and E-Z Mart filed a reply (Doc. 39).

**I.     Background**

Spears was employed by E-Z Mart from March 18 to May 9, 2010. He asserts claims under the Americans with Disabilities Act ("ADA"), Oklahoma's anti-discrimination law, *Okla. Stat.* tit. 25, §§ 1101 et seq., and a claim for intentional infliction of emotional distress. He alleges that he has a seizure disorder qualifying as a disability, and he claims that his supervisor at E-Z Mart, Natasha Glass ("Glass"), terminated his employment because of his disability. He also contends that he was discharged without reasonable accommodation. The summary judgment record reveals the following undisputed facts:

On May 4, 2010, Spears' mother called Glass to inform Glass that Spears was ill and would not be coming to work. Spears had already been off of work for several days before that call. After speaking to Spears' mother, Glass spoke to Spears directly, and Spears informed Glass that he had a sore throat and was having seizures. Glass asked that Spears bring a doctor's note confirming the need for time off for these maladies, and Spears subsequently provided a

note from his physician stating that Spears "should be able to return to work in 2-4 days." (Doc. 26-12). Glass then allowed for at least 4 days off and told Spears that she would see him Sunday, May 9, 2010, five (5) days after his visit to the doctor.[1]

Spears did not come to work on May 9, 2010. E-Z Mart contends that Glass fired Spears pursuant to E-Z Mart's strict No Call / No Show policy, because he failed to show up for a scheduled shift on May 9 and failed to call in advance to explain his absence. E-Z Mart's No Call / No Show policy (Doc. 26-18) provides:

> Not reporting to work and not calling to report the absence is a no call / no show and may result in discipline, up to and including immediate termination. Management may consider extenuating circumstances when determining discipline for a no call / no show (for instance, if the employee is in a serious accident and is hospitalized) and has the right to exercise discretion in such cases.

E-Z Mart, as a chain and including the Collinsville, Oklahoma store at which Spears worked, strictly enforces the No Call / No Show policy upon one incident unless there are extenuating circumstances like those stated in the policy. (Doc. 26-19). E-Z Mart submitted records substantiating that, based upon the No Call / No Show policy, five (5) other employees at the Collinsville store were discharged from employment for failing to timely call or show to work in 2009 and 2010. (Doc. 26-21). Spears does not dispute this evidence, but asserts, in conclusory fashion, that the policy and evidence are "irrelevant."

Medical records of Spears' doctor visit on May 4, 2010, as well as medical records for the time-frame in general, specifically indicate that Spears was *not* having seizures on May 4, 2010 and that, as of April 28, 2010, Spears had informed his doctor that he "has not had any seizure [sic] for some time now," and informed the doctor on December 1, 2010 that he "has not

---

[1] E-Z Mart is a convenience store which operates 24 hours a day, 7 days per week, including Sundays.

had any seizures for about three years." (Doc. 26-6).  The physician's record for the May 4 visit reflects that Spears was seen for "tonsillitis."  (Doc. 26-5 at 56-67; Doc. 26-11). [2]

Spears attempts to establish a discriminatory motive by claiming that (1) he received from his cousin (who was also an employee of E-Z Mart and was residing with Spears and Spears' mother) a schedule that showed Spears was not scheduled to work on May 9, (2) after receiving the schedule, he called Glass on May 9 to inquire why he was not on the schedule for that day (when he was set to work that day according to an earlier schedule), and Glass explained that he was fired and would not be on the schedule again, and (3) his cousin informed him that Glass had previously asserted that she wanted to "get rid" of Spears and that Glass told the cousin after Spears' discharge "I hope you're not upset with me for the way I did your cousin."

The testimony of both Spears and his cousin is equivocal, confused, and contradictory as to the timing of the events of the entire week that included May 4 through May 9, 2010, and the cousin (who Spears alleges to have provided the schedule showing Spears was not scheduled to work on May 9) ultimately testified that he did not remember if Spears worked on May 9 and could not positively state when he received the new schedule and provided it to Spears.  Spears was also confused as to what dates he was sick and what days of the week were involved as to certain events that week, such as when he was sick and went to the doctor.  (*See* Doc. 26-1 at 62-68; Doc. 26-9 at 102-103, 106, 109-110, 113-114).

---

[2]   As is the case in numerous places throughout his response brief, Spears did *not* submit evidence to dispute E-Z Mart's specific undisputed facts.  Instead, Spears summarily asserted that the evidence is "irrelevant" or "requires the Court to improperly draw inferences in favor of Defendant." (*See, e.g.,* Doc. 37 at ¶ 5 (asserting to be "irrelevant" medical records of plaintiff's marijuana use as impacting possibility of seizures), ¶ 6 (stating that physician's indication that plaintiff reported having no seizures for years was irrelevant and would require drawing inferences in favor of E-Z Mart), ¶ 13 (generically disputing 4 paragraphs of E-Z Mart's undisputed facts [regarding Spears' report to his doctor that he had not had any seizures and was treated only for a complaint of tonsillitis during the week his employment was terminated] "to the extent they require the Court to improperly draw inferences in favor of Defendant")).

In a further effort to support an inference of discrimination and pretext, Spears asserts that Glass did not explain to him why he was being terminated, and that it was his cousin who informed him that Glass reported that Spears was fired for a violation of the store's No Call / No Show policy. However, the cousin (Spears' key witness) denies that Glass told him the reason for terminating Spears. (Doc. 26-9 at 117). As to Spears' allegation that the cousin had overheard Glass previously state that she did not believe Spears had seizures, that Spears was "lazy," and that she was going to "get rid" of Spears, the cousin actually testified that he did not remember who made the comments, he could not "remember who said exactly what," and the "lazy" comment did not relate to any issue of seizures. (Doc. 26-9 at 100-103, 106).

## II.  General Standard Applicable to Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "By its terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). In considering a summary judgment motion, the courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The evidence of a non-movant is to be taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Anderson*, 477 U.S. at 255; *see Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). The plain language of Fed. R. Civ. P. 56 mandates entry of summary judgment against a party who fails to

make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

The summary judgment procedure is "not . . . a disfavored procedural shortcut, but rather [is] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327. When the moving party has carried its burden under Rule 56(c), its "opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 259.

### III. Discussion

#### A. ADA Claims

##### 1. Alleged Discrimination

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). ADA discrimination cases are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). The plaintiff bears the initial

burden of establishing a prima facie case of discrimination under the ADA. To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate (1) that he is "disabled" within the meaning of the ADA, (2) that he is qualified to perform the essential functions of the job, with or without reasonable accommodation, and 3) that he was discriminated against because of his disability. *Hennagir v. Utah Dept. of Corrections*, 587 F.3d 1255, 1261 (10th Cir. 2009); *Butler v. City of Prairie Vill.*, 172 F.3d 736, 748 (10th Cir. 1999).

If the plaintiff meets that burden, then the defendant must offer a legitimate, non-discriminatory reason for the employment action. If the defendant satisfies that burden, the plaintiff then has the burden of demonstrating that the defendant's proffered reason is pretextual. *McDonnell Douglas*, 411 U.S. at 802-03; *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). To defeat summary judgment, the plaintiff has to show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – i.e., unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). "Mere conjecture that the employer's reason is pretext . . . will not defeat a motion for summary judgment." *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).

In this case, Spears has failed to establish his prima facie case that he was discriminated against because of any disability.[3] To establish a prima facie case, Spears must show that he was terminated because of his disability, which "requires [that Spears] present some affirmative

---

[3] The Court need not consider whether Spears' alleged seizures rendered him disabled under the ADA, as the Court finds that Spears has failed to present any evidence establishing that E-Z Mart discriminated against him because of any disability. Nonetheless, the Court notes that Spears' alleged seizure disorder does not *per se* qualify as a disability within the meaning of the ADA. *See, e.g., Landry v. United Scaffolding, Inc.*, 337 F. Supp. 2d 808, 812 (M.D. La. 2004) (plaintiff with seizures not disabled where seizures did not substantially limit any major life activity); *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352-53 (4th Cir. 2001) (same); *Ainsworth v. Independent Sch. Dist. No. 3 of Tulsa County, Oklahoma*, 04-CV-694-JHP, 2006 WL 1548838 (N.D. Okla. May 31, 2006) (same); *Durham v. McDonald's Rest. of Oklahoma, Inc.*, 07-CV-273-JHP, 2008 WL 3992146 (N.D. Okla. Aug. 22, 2008) (same).

6

evidence that disability was a determining factor in the employer's decision." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citation omitted). In other words, "the plaintiff must present evidence that, if the trier of fact finds it credible, and the employer remains silent, [plaintiff] would be entitled to judgment as a matter of law." *Id.* (citation omitted). While the burden is not onerous, it is also "not empty or perfunctory." *Id.*, quoting *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir. 1995).

Here, viewing the record in the light most favorable to Spears, there is no evidence that E-Z Mart's decision to terminate plaintiff was due to a disability or seizure disorder. Spears himself repeatedly asserts that Glass did *not* believe he was disabled or had seizures, which in itself tends to refute Spears' assertion that Glass fired him because of any disability or because she regarded him as disabled. Moreover, most of Spears' alleged evidence of discrimination rests upon information that his cousin purportedly provided him, but the cousin's testimony discredits rather than supports Spears' assertion of a discriminatory motivation behind his discharge. In short, Spears has not provided *any evidence* that E-Z Mart discriminated against him because of a disability. The evidence does not establish or give rise to an inference that Spears was terminated because of a disability, and the Court concludes that a jury could not reasonably find for Spears, as his evidence does not present "a sufficient disagreement to require submission to a jury . . . [but rather the evidence] is so one-sided that [E-Z Mart] must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Even assuming that Spears' assertions, conjecture and conflicting testimony were to establish a prima facie case of discrimination, which it does not, E-Z Mart provided significant evidence that Spears was discharged in accordance with the No-Call / No-Show policy, because he did not show up or call to explain his absence from work on May 9, 2010. That is a

7

legitimate, non-discriminatory reason for termination. To the extent Spears claims that his cousin provided him a schedule showing that he had been removed from the May 9 shift before that date and time, the testimony was equivocal, as both Spears and his cousin were unspecific, contradictory, and confused about the exact timing of the events of the entire week, and the cousin was unaware whether Spears did or did not actually work on May 9, 2010. (*See, e.g.*, Doc. 26-1 at 62-68; Doc. 26-9 at 101-103, 106, 109-110, 113-114).

In the summary judgment briefing, E-Z Mart provided proof that Spears did *not* call Glass on May 9, 2010, as Spears claims he did. E-Z Mart's proof on this point consisted of (1) Spears' own interrogatory answers providing the telephone number which he stated he believed he used to call Glass that day, and (2) Spears' records for that telephone number, which established that Spears did *not* call Glass from that number as he had claimed. Furthermore, Spears did not provide *any* evidence to dispute E-Z Mart's proof and did not provide *any* records for alternative telephones that he claims he may have used. Instead, Spears merely purports to dispute E-Z Mart's evidence "to the extent that the referenced testimony does not support that Plaintiff specified from what telephone number he contacted Ms. Glass at the store the morning of May 9, 2010." (Doc. 37, p. 6 at ¶ 16). E-Z Mart's proof was based on the phone number which *Spears* provided. Specifically, E-Z Mart provided the Court with Spears' answers to interrogatories in which he stated that he "believes his landline was used to call E-Z Mart [on May 9, 2010] . . . and that number is 918-***-****." (Doc. 26-15 at 4). E-Z Mart supplied the records for that phone number, reflecting no calls from it to the E-Z Mart on May 9, 2010. (Doc. 26-16). Spears' hide-and-seek response is insufficient to refute E-Z Mart's convincing evidence on that point. Spears has failed to provide any evidence to support his assertion of pretext.

In summary, Spears offered no evidence which established that E-Z Mart discriminated against him because of a disability, whether as part of a prima facie case or as a showing that E-Z Mart's evidence of legitimate, non-discriminatory reasons for the termination were in fact pretextual. His conjecture that he was discriminated against is not enough to refute the significant and convincing record evidence provided by E-Z Mart that he was terminated for legitimate, non-discriminatory reasons, specifically, a violation of E-Z Mart's No-Call / No-Show policy. Accordingly, summary judgment is proper. *See, e.g., Richmond*, 120 F.3d at 209 ("Mere conjecture. . . will not defeat a motion for summary judgment."); *Meiri v. Dacon*, 759 F.2d 989 (2d Cir. 1985) (discharged employee's conclusory allegations that supervisor conspired to "get rid" of her, misconceived her work habits because of subjective prejudice against her religion, that employee heard disparaging remarks but said "don't ask me to pinpoint people, times or places," were insufficient to establish that the employer's nondiscriminatory reasons for discharge were merely a pretext for religious discrimination); *Woodbury v. Sears, Roebuck & Co.*, 901 F. Supp. 1560 (D. Fla. 1995), citing *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1985) (plaintiff's subjective opinion that employer's action was discriminatory, without supporting evidence, is not sufficient to establish pretext so as to avoid summary judgment).

        2.    *Alleged Failure to Accommodate*

With respect to Spears' reasonable accommodation claim, his only assertion is that his supervisor at E-Z Mart made him provide a doctor's note for his absence of several days, while he asserts that other employees did not have to provide doctor notes for absences. However, E-Z Mart provided undisputed evidence that it has terminated several other employees for violation of the No-Call / No Show policy and that other employees who may not have been asked to provide a doctor's note requested only one day off of work. Spears also testified that he did not

need any accommodation to perform the essential functions of his job, and he indicated that he did not want any accommodation. (Doc. 26-1 at 45-46). There is no genuine dispute of material fact regarding any failure to accommodate claim.

The failure to accommodate claim also fails because Spears failed to exhaust his administrative remedies as to such claim. E-Z Mart provided the EEOC charge filed by Spears (Doc. 26-4) and established that the charge does not include any claim based upon an alleged failure to accommodate his disability. In response, Spears summarily asserts that he disputes that point "as a legal conclusion," but he offers no analysis of the charge to support his summary denial. There is no genuine issue of material fact relating to Spears' accommodation claim, and the failure to accommodate claim must be dismissed because Spears did not exhaust his administrative remedies for a failure to accommodate. In *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186-87 (10th Cir. 2007), the court determined that a plaintiff failed to exhaust a claim for failure to accommodate because the EEOC charge did not include allegations of any failure to accommodate. The court reasoned that the plaintiff failed to exhaust because the charge did not include any specific facts that would prompt an investigation of the plaintiff's claim that his employer failed to accommodate his perceived disability. *Jones*, 502 F.3d at 1187. Like the plaintiff in *Jones*, Spears failed to exhaust his administrative remedies as to any claim for failure to accommodate, and that claim must be dismissed.

### B.     Oklahoma Discrimination Claim

Under the Oklahoma anti-discrimination act ("OADA"), "[i]t is a discriminatory practice for an employer . . . [t]o fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of race, color, religion, sex, national origin, age, genetic information or

disability, unless the employer can demonstrate that accommodation for the disability would impose an undue hardship on the operation of the business of such employer." *Okla. Stat.* tit. 25, § 1302(A)(1). "Because the protections provided by the OADA are 'co-extensive with the protections provided by federal law under the ADA,' a plaintiff's OADA claim fails 'if her federal discrimination claims fail.'" *Hamilton v. Oklahoma City Univ.*, CIV-10-1254-D, 2012 WL 5949122 (W.D. Okla. Nov. 28, 2012) (quoting *McCully v. American Airlines, Inc.*, 695 F. Supp. 2d 1225, 1246–47 (N.D. Okla. 2010); *Stanley v. White Swan, Inc.*, 2002 WL 32061753, at *11 (W.D. Okla. Sept. 26, 2002)). For the same reasons Spears' ADA claims fail, his claims under the OADA cannot survive summary judgment.

### C.     Intentional Infliction of Emotional Distress

Spears has asserted a claim under Oklahoma law for intentional infliction of emotional distress ("IIED"), premised on the same allegations upon which he bases his disability claims. To establish a claim for IIED, Spears must prove that: (1) E-Z Mart acted intentionally or recklessly; (2) E-Z Mart's conduct was extreme and outrageous; (3) Spears actually experienced emotional distress; and (4) Spears' emotional distress was severe. *Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1111 (10th Cir. 1999), citing *Gaylord Enter. Co. v. Thompson,* 958 P.2d 128, 149 (Okla. 1998) and Restatement (Second) of Torts § 46. Spears must show that E-Z Mart's conduct exceeded "all possible bounds of decency" or was "utterly intolerable in a civilized community." *Taylor*, 196 F.3d at 1111 (citations omitted). In the employment context, courts have consistently applied a very high threshold before recognizing a cause of action for intentional infliction of emotional distress under Oklahoma law. *See, e.g., Eddy v. Brown,* 715 P.2d 74, 77 (Okla. 1986). The trial court is to act as a "gatekeeper" and initially determine, as a matter of law, if the defendant's alleged conduct is sufficiently extreme and outrageous, as

defined in Restatement of Torts (Second) § 46, to allow recovery. *See Trentadue ex rel. Aguilar v. United States,* 397 F.3d 840, 856, n.7 (10th Cir. 2005); *see Eddy,* 715 P.2d at 76.

While the requirements to establish a claim for IIED are clear, Spears points to no facts in the record which establish that E-Z Mart's conduct was outrageous, utterly intolerable, or beyond all bounds of decency.  Instead, his claim is premised upon his allegation of discrimination, his assertion that Glass required him to provide a doctor's note the day he called in, and his contention that Glass required him to speak directly to her the day he (and his mother) called Glass to report that he was sick.  The Court has determined that those assertions, taken in the light most favorable to Spears, do not establish any genuine dispute of material fact supporting his claim of discrimination.  For the same reasons, the Court concludes, as a matter of law, that the allegations do not rise to the level of sufficiently extreme or outrageous conduct as to establish an IIED claim.

**IT IS THEREFORE ORDERED** that the defendant's Motion for Summary Judgment (Doc. 26) is **granted**.  A separate judgment will be entered forthwith.

**IT IS FURTHER ORDERED** that the parties' pending motions in limine (Doc. 24, 25) are **moot**.

**IT IS SO ORDERED** this 26th day of March, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE